```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

                                              Criminal No.
                                              06-10239-WGY


* * * * * * * * * * * * * * * *
                               *
UNITED STATES OF AMERICA       *
                               *
v.                             *    DISPOSITION
                               *
JEROME T. COLEMAN              *
                               *
* * * * * * * * * * * * * * * *




          BEFORE:  The Honorable William G. Young,
                          District Judge




APPEARANCES:

          JOHN T. McNEIL, Assistant United States
    Attorney, 1 Courthouse Way, Suite 9200, Boston,
    Massachusetts 02210, on behalf of the Government


          FEDERAL PUBLIC DEFENDER OFFICE (By Page
    Kelley, Esq.), 408 Atlantic Avenue, Third Floor,
    Boston, Massachusetts 02210, on behalf of the
    Defendant



                                    1 Courthouse Way
                                    Boston, Massachusetts

                                    April 17, 2009
```

1           **THE CLERK:** All rise.  Court is in session, please
2    be seated.
3           Calling Criminal Action 06-10239, the United States
4    v. Jerome Coleman.
5           **THE COURT:** Good afternoon.  Would counsel identify
6    themselves.
7           **MR. McNEIL:** Good afternoon, your Honor.  John
8    McNeil for the United States.
9           **MS. KELLEY:** Good afternoon, your Honor.  Page
10   Kelley, and I represent Jerome Coleman.
11          **THE COURT:** Who's present in the courtroom.
12          Mr. Coleman, have you read the presentence report
13   that has been prepared in your case?
14          **THE DEFENDANT:** Yes, I have, your Honor.
15          **THE COURT:** And have you talked it all over with
16   Ms. Kelley?
17          **THE DEFENDANT:** Yes, I have, your Honor.
18          **THE COURT:** Do you believe you understand it?
19          **THE DEFENDANT:** Yes, I do, your Honor.
20          **THE COURT:** Please be seated.
21          Nothing has been withheld from the presentence
22   report under the Rules of Criminal Procedure?
23          **THE PROBATION OFFICER:** No, your Honor.
24          **THE COURT:** Sentencing in this Court proceeds in
25   four steps.  The first step is to calculate the highest

1    constitutionally reasonable sentence.  The second step is to
2    figure out the average sentences that are imposed on an
3    offender who commits these charges.  I am quick to say that
4    I do not in any way sentence from averages, but by
5    consulting the available databases with respect to those
6    average sentences, I get some sense of what weight to give
7    to the advisory sentencing guidelines.
8         The third step is properly to calculate the
9    advisory sentencing guidelines.  And let me pause there and
10   say if, as I make any of these calculations, if counsel
11   would differ from anything that I say, I want you to
12   interrupt me, I will address the matter at once and attempt
13   to resolve it.
14        When those steps have been taken, I will turn to
15   what is truly the most important of the determinations, and
16   that is to consider Mr. Coleman and the needs of society in
17   particular with respect to these offenses, and I'll hear
18   from the government, hear from the defense, hear from Mr.
19   Coleman if Mr. Coleman wishes to be heard from.
20        In this case, Mr. Coleman is subject -- well, let's
21   figure out the highest constitutionally reasonable sentence.
22   And his base offense level is at 24 given the former felony
23   convictions for controlled substance offenses.  I add four
24   levels because he possessed a firearm in connection with the
25   sale of cocaine.  That takes us to an adjusted offense level

1   of 28, but as he is an armed career criminal that puts us at
2   a level 34 with a criminal history category IV, and that
3   would give us a range, the top of which would be life in
4   prison.  So the -- wait a minute.  That's not right.
5           **MS. KELLEY:**  That's not right.
6           **THE COURT:**  That's not right, and thank you.
7           At 34, with a criminal history category IV, the top
8   of the range would be 262 months, and it is that that is the
9   highest constitutionally reasonable sentence.
10          Mr. McNeil.
11          **MR. McNEIL:**  If I may, your Honor.  Two points I
12  would like to make.  The first is that the criminal history
13  in this case is VI rather than IV.
14          **THE COURT:**  And that's because he's an armed career
15  criminal.
16          **MR. McNEIL:**  That's correct, your Honor.
17          **THE COURT:**  That's what drives it up to the VI?
18          **MR. McNEIL:**  That's right, your Honor.  And also
19  the way the guidelines apply as well, because there was a
20  drug offense in connection with the --
21          **THE COURT:**  All right, I accept that correction.
22          **MR. McNEIL:**  There's one other correction I'll
23  make.
24          The Court made reference to the calculation of the
25  underlying guideline in the absence of the armed career

1    criminal and career offender guideline.  And the government
2    has some disputes about how that number is calculated.
3            **THE COURT:**  But it makes no difference --
4            **MR. McNEIL:**  Right.
5            **THE COURT:**  -- in terms of either the application
6    of -- and there is a mandatory minimum now, is there not?
7            **MR. McNEIL:**  There is, your Honor, there's a 15
8    year mandatory minimum.
9            **THE COURT:**  Yes.  And beyond that the underlying
10   guideline calculation is not the advisory sentencing
11   guideline.
12           **MR. McNEIL:**  That's correct.  The only point I want
13   to make and then I'll make it no longer, that if on the
14   outside chance there was to be a resentencing the government
15   would likely reserve the opportunity at that time to argue
16   that this additional enhancement applies.  But for purposes
17   of today there's no reason for the Court to resolve this
18   dispute between the defense and the government.
19           **THE COURT:**  And additional enhancement with respect
20   to what so I'm clear.
21           **MR. McNEIL:**  The calculation of the -- you said
22   that the --
23           **THE COURT:**  Oh, I do follow.  And I just want it
24   clear on the record here.
25           **MR. McNEIL:**  Okay.

1       **THE COURT:** And so the additional enhancement is
2   what?
3       **MR. McNEIL:** The additional enhancement is laid out
4   on page 32 of the PSR and it would be an additional
5   enhancement of two levels under 3C1.1.
6       **THE COURT:** And that's a position that the
7   government has taken, but the probation has not recommended
8   to the Court.
9       **MR. McNEIL:** Exactly. Probation has rejected that
10  and the defendant opposes that.
11      **THE COURT:** Thank you. And the Court expresses no
12  opinion at all, but the government has reserved its rights
13  should there be a resentencing.
14      Now, accepting the correction, properly, that it
15  is, given his status as an armed career criminal, the
16  mandatory minimum sentence is 15 years in prison and the
17  highest constitutionally reasonable sentence is 327 months
18  in prison.
19      Now, if we look at the data relative to the
20  imposition of such sentences, the average data published by
21  the sentencing commission's website, it does not distinguish
22  between armed career criminals and other offenders, and the
23  highest range would be a firearms range. So taking that as
24  the average, the average national sentence is 85 months in
25  prison; the average sentence in the First Circuit is 83, 84,

1     excuse me, months in prison; in the District of
2     Massachusetts, from the confidential database maintained by
3     our probation department, the average sentence post-Booker
4     is 171 months in prison.  If you look at the publicly
5     available database maintained by Mr. Womack, the official
6     court reporter in this session, which has the sentences of
7     this Court post-Booker, but which goes count by count, but
8     it cannot differentiate between those who are armed career
9     criminals or career offenders and others, the average
10    sentence on the drug counts would be 144 months in prison,
11    the average sentence on the firearms count would be 77
12    months in prison.
13            Now, turning to the proper calculation of the, the
14    advisory sentencing guidelines, the Court does award a three
15    level reduction in light of Mr. Coleman sparing the
16    government the burden and expense of a trial, and that takes
17    us down to a criminal history level 31, with a, not a
18    criminal history, but an offense level 31, with a criminal
19    history category VI, and from which the Court derives an
20    advisory range not less than 188 nor more than 235 months, a
21    period of supervised release of six years, a fine of not
22    less than 15,000 nor more than $8 million, and there must be
23    a $500 mandatory special assessment, the aggregate of $100
24    per count.
25            Arithmetically, is the guideline range properly

1  calculated, Mr. McNeil?
2          **MR. McNEIL:**  Yes, your Honor.
3          **THE COURT:**  Ms. Kelley?
4          **MS. KELLEY:**  Yes, your Honor.
5          **THE COURT:**  Arithmetically.
6          All right, those are the first three steps, let's
7  turn to the important step four.  Mr. McNeil, I'll hear you.
8          **MR. McNEIL:**  Your Honor, I'm going to be brief.
9  There's a plea agreement in this case.  There's agreement on
10 the applicability of the guidelines in this case that Mr.
11 Coleman is both an armed career criminal and qualifies as a
12 career offender in this case.  There's also an agreed upon
13 recommendation for a sentence in this case, and the
14 government fully stands behind this sentence as being
15 reasonable in the circumstances.
16         That recommendation is a period of incarceration of
17 188 months.  It includes a period of supervised release of
18 six years.  There's no fine recommended in this particular
19 case.  There is a $500 special assessment recommended.  And
20 in addition, there is just a matter of forfeiture of the
21 firearm and the ammunition that were recovered, not actually
22 from Mr. Coleman's person, but from a location where Mr.
23 Coleman dropped it several days before, and the government
24 has filed prior to the hearing today an order of forfeiture.
25         And that's the government's recommendation.

1          **THE COURT:** Thank you.  Ms. Kelley.

2          **MS. KELLEY:** Yes, your Honor.  I'll be brief as
3  well.

4          This is an especially bitter occasion for me.  I
5  was the head of the Middlesex County Office for the
6  Committee for Public Counsel Services for about five years
7  before I came to this office, and I worked very closely with
8  Mr. Coleman's mother, Joyce Coleman, who's head of probation
9  for the Superior Court in Middlesex County.  And when I
10 first got this case, I actually was unaware of the extent of
11 the kind of tragedy that this family had suffered through
12 the years.  As outlined in probation's report, Mr. Coleman's
13 father was mentally ill.  Eventually he murdered his second
14 wife and Mr. Coleman's brother, his own son, a number of
15 years ago.  He abused Joyce for many years.  His behavior in
16 spite of Joyce Coleman's incredible work ethic and
17 determination to educate herself led to a lot of deprivation
18 for the family and four children.

19         Mr. Coleman, interestingly enough, has these three
20 prior drug convictions for selling drugs from 18, one is 18
21 years ago, one is 15 years ago, and the other one short on
22 the heels of that.  So, from 15 years ago he has these
23 convictions now coming back to enhance this sentence which
24 would be, as I calculate it, and there's some disagreement
25 with the government, but it's not a huge disagreement, the

1    bottom of his range would be 84 months except for these,
2    what I consider to be just ferocious enhancements.
3              Besides just knowing and loving his mother, I have
4    gotten to know Mr. Coleman, Jerome.  And as you can see from
5    reading the report there, he is a loving father of his own
6    nine-year-old son.  He has a long-term relationship with a
7    woman who's 41 and has three other children whom he has
8    raised as his own children and supported them financially
9    and otherwise.
10             He's a licensed plumber.  And his -- could you just
11   stand up.  He has two owners here of the plumbing company he
12   was working for.  They love him.  He was a great worker.
13   And they've done -- they have said they would take him back
14   in a second.
15             Thank you very much.
16             You can see the kind of range of his family here.
17   Sam Fern, this man on the end, was kind of taken in by
18   Mr. Coleman's family and raised as their own son.  He's a
19   lawyer.  He went to law school.  All of the family members,
20   I've met with them in their homes, say that Mr. Coleman is a
21   totally nonviolent, wonderful, supportive member of the
22   family.  And as you can see from the letter from his sister,
23   Tracie, who's here today and works for Harvard Real Estate,
24   he was a great member of the community.  If a neighbor had a
25   plumbing issue he would jump in his truck and drive over

```
 1    there and help them for free.  He redid many family members'
 2    homes, the kitchens and bathrooms in their homes for them.
 3              How it came to this and him getting a 16 year
 4    sentence I think has a lot to do with obviously incredibly
 5    bad judgment, but also his own financial straits.  He's
 6    supporting four children and his wife, and just had great
 7    difficulty making ends meet on his plumbing salary.  And he
 8    thought he could make some extra money this way.  He knew
 9    Troy Lozano, the cooperating witness who asked him to sell
10    drugs to him.  The family confirms this, and he says he has
11    never had any involvement with firearms.  He resisted
12    selling Mr. Lozano the firearm, but eventually did it.  And
13    he -- I don't think there's any question the firearm part of
14    this was completely out of character for him and not
15    something he ever would have volunteered to do.  So, this is
16    just a very sad day.  And I would ask your Honor to take
17    that into consideration when considering whether to accept
18    the sentence that we agreed to.
19              He has some serious medical issues.  In 2006 he
20    suffered a stroke for which he was hospitalized, I think for
21    about a week.  And then shortly after that he had heart
22    surgery to repair a hole in his heart.  And I would ask your
23    Honor to consider just recommending to the Bureau of Prisons
24    that they put him at Fort Devens.  He needs some additional
25    medical testing.  Although he's not in any kind of acute
```

|   |   |
|---|---|
| 1 | state of needing medical care, the family and he have both |
| 2 | suggested to me it would really ease everyone's mind if he |
| 3 | could have the follow-up testing that he was supposed to |
| 4 | have after these medical procedures but never had because of |
| 5 | this case.  So, if your Honor would consider doing that. |
| 6 | He is an ex-military man.  He served in the |
| 7 | Reserves from 1985 to 1993.  He is very proud of that. |
| 8 | That's one of the first things his family mentions when |
| 9 | they're talking about his background.  He did very well |
| 10 | there.  He was honorably discharged.  He was Private First |
| 11 | Class when he was discharged and a medic specialist. |
| 12 | So, to me this is just a huge tragedy personally. |
| 13 | He has so much charisma.  Whenever I've been to Walpole to |
| 14 | see him, just spontaneously, every time, the corrections |
| 15 | officers comment to me what a wonderful person he is.  He's |
| 16 | helping people on the unit.  I have another client who's |
| 17 | incarcerated with him who told me, also spontaneously, that |
| 18 | he protects younger people on the unit who might be taken |
| 19 | advantage of.  He counsels people to sort out their |
| 20 | differences verbally.  He's just a great guy.  He's a |
| 21 | wonderful human being.  He's going to do a lot of good in |
| 22 | prison, sadly, now instead of outside. |
| 23 | So, that's what I have to say about Mr. Coleman. |
| 24 | **THE COURT:**  Thank you. |
| 25 | Mr. Coleman, you have the right to talk to me |

1   directly.  You are not required to, but if you would like to
2   say something, you may speak to me now.
3           **THE DEFENDANT:**  Yes, your Honor, I would.
4           **THE COURT:**  Yes.
5           **THE DEFENDANT:**  Your Honor, I just want to say, I
6   just want -- I just want the Court to know it's real simple.
7   My family and my friends never gave up on me.  I just don't
8   want the Court to give up on me either.  I can't say no
9   more.
10          **THE COURT:**  Very well.
11          Mr. Jerome Coleman, in consideration of the
12  provisions of 18 United States Code, Section 3553(a), the
13  information from the United States Attorney, the information
14  from your attorney, the probation office and yourself, this
15  Court accepts the recommendation and sentences you to 15
16  years and eight months in the custody of the United States
17  Attorney General.  The Court imposes upon you thereafter six
18  years of supervised release.
19          The Court imposes no fine due to your inability to
20  pay a fine.  The Court imposes a $500 special assessment.
21  The sentence imposed is imposed on each count and the
22  sentences will run concurrent one with the other.
23          The special conditions of your supervised release
24  are that you're prohibited from possessing a firearm,
25  destructive device, or other dangerous weapon.

```
 1              You'll participate in a mental health treatment
 2   program as directed by the probation office.  You're
 3   required to pay into the costs of such program to the extent
 4   of your ability.
 5              The Court imposes forfeiture as prayed for by the
 6   government.
 7              Let me explain this sentence to you.  This is not
 8   simple, Mr. Coleman.  Though both the government,
 9   sensitively, and your attorney, in your corner, zealously,
10   have agreed upon the recommendation.  The congress has
11   decreed in circumstances such as this a 15 year sentence,
12   for starters.  Those are the people's elected
13   representatives.  I must, and without hesitation I do,
14   follow what they require.  You get 15 years and eight
15   months.
16              No one is giving up on you, sir.  You said that
17   very well.  This is a long sentence by anyone's calculus.  I
18   do not minimize that.  The sentence is imposed solely to
19   protect the people of the United States against the sale of
20   contraband drugs which do addict and kill people.  They ruin
21   the lives of families and children.  A long sentence is, in
22   your case, just.
23              But I have read, I always do, and in your case I
24   have read every letter, every document that's been submitted
25   to me.  I am satisfied that you are in no way a violent
```

1  person.  You took a course that was woefully illegal and you
2  will pay for that many times over.  But, in those long years
3  don't think that anyone is giving up on you.  Your family
4  has not.  And your extended family, those with whom you've
5  worked, those who care about you, I know, and earnestly
6  pray, that they'll go on caring about you.
7            In a very real sense, Ms. Kelley, your attorney,
8  she's your attorney, she's done everything that can be done
9  for you, and will continue to do that because that's the
10 kind of attorney she is.  The government has not been
11 vindictive or savage here.  These are the sentences that
12 congress has required.
13           But, insofar, having imposed that sentence now,
14 insofar as things can be done to help you and assist you, I
15 do strongly recommend that you serve that sentence at the
16 correctional institution at Fort Devens.  I can only
17 recommend it, but I recommend it.  And I do so and state on
18 the record that that poses the best chance not only of you
19 getting adequate medical care, because the federal system
20 has quite good medical care, but also so that you may
21 maintain ties most easy with people on the outside and have
22 something to come back to.  So, no one's giving up on you.
23           Now, you are entitled to credit toward the service
24 of this sentence from August 17th through August 18th, 2006,
25 and from November 14th, 2006 to the present.  I believe

```
 1    that's accurate.
 2             You say you visited him in Walpole, Ms. Kelley.
 3    He's been detained on these federal charges, that's what I'm
 4    told here, and he should get those credits.
 5             You agree with that?
 6             MS. KELLEY:  Yes.
 7             THE COURT:  Oh, all right.
 8             You have the right to appeal, Mr. Coleman, from any
 9    findings or rulings the Court has made against you.  Should
10    you appeal and should your appeal be successful in whole or
11    in part and the case remanded you'll be resentenced before
12    another judge.
13             Ms. Kelley, should an appeal be decided upon, I
14    want you to order transcript from this Court before filing
15    the notice of appeal because we'll turn around your request
16    right away.
17             Do you understand?
18             MS. KELLEY:  Yes.
19             THE COURT:  That's the sentence of the Court.  He's
20    remanded to the custody of the marshals.
21             MR. McNEIL:  Just one --
22             THE COURT:  Yes.
23             MR. McNEIL:  I'm sorry, your Honor.  And I know
24    it's not usually the practice, but there is an appeal waiver
25    in this plea agreement.
```

```
 1            THE COURT:  That's, that's your position.
 2            MR. McNEIL:  Right.
 3            THE COURT:  And at the time of the plea I explained
 4   that I was going to tell him he could appeal and that if he
 5   tried you would run, you or your colleagues would run in
 6   here before me or some other judge and bring the appeal
 7   waiver to the attention of that judge.  I have no occasion
 8   to rule on it.  I do not.  I notify him of his rights to
 9   appeal.
10            MR. McNEIL:  Thank you, your Honor.
11            THE COURT:  All right.  That's the sentence.
12            (Whereupon the matter concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1       **C E R T I F I C A T E**

2

3            I, Donald E. Womack, Official Court Reporter for

4       the United States District Court for the District of

5       Massachusetts, do hereby certify that the foregoing pages

6       are a true and accurate transcription of my shorthand notes

7       taken in the aforementioned matter to the best of my skill

8       and ability.

9

10

11
                    /S/ DONALD E. WOMACK 10-5-2009
12                  _____
                           DONALD E. WOMACK
13                       Official Court Reporter
                             P.O. Box 51062
14                  Boston, Massachusetts 02205-1062
                          womack@megatran.com
15

16

17

18

19

20

21

22

23

24

25